```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```
TONY BORDEN,

                Petitioner,

  -vs-

JAMES CONWAY, SUPERINTENDENT
ATTICA CORRECTIONAL FACILITY

                Respondent.
_____

**DECISION AND ORDER**
**No. 09-CV-6211T**

## I.  Introduction

*Pro se* petitioner Tony Borden("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered August 24, 2005, in New York State, Supreme Court, Erie County, convicting him, after a jury trial, of Rape in the First Degree (N.Y. Penal Law ("Penal Law") former § 130.35[3]) and Endangering the Welfare of a Child (Penal Law § 260.10[1]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

The charges arise from an incident that occurred on June 25, 2004, in the City of Buffalo, New York, wherein Petitioner placed seven-year-old L.C. ("the victim") on his bed, took her clothes off, held her down by her arms, and engaged in sexual intercourse with her.  Trial Trans. [T.T.] 228-230.

At the time of the incident, Petitioner and the victim's mother were engaged to be married and were living at Petitioner's home at 17 Schreck Street. T.T. 346-347. On June 25, 2004, the victim's mother returned from work and found her daughter coloring in the back bedroom of Petitioner's home. T.T. 350. The victim indicated to her mother that she wanted to take a nap, and proceeded to do so. T.T. 351. After approximately forty-five minutes, the victim's mother woke her daughter up and fed her. The victim's mother then went into the bathroom, which was connected to the back bedroom, and smoked crack. T.T. 353. When she was coming out of the bathroom, she heard Petitioner whisper "hurry." T.T. 354. She saw Petitioner trying to cover his groin area and noticed something was wrong with her daughter. She took the victim into the bathroom and saw semen on her thigh. The victim told her mother what Petitioner had done. Petitioner tried to prevent the victim and her mother from leaving his home. The victim then went to the hospital with her mother. T.T. 354-365.

At the hospital, the victim was examined by Muhammed Qureshi, M.D. who found evidence of recent trauma to the victim's hymen, which had been torn. T.T. 455-456, 553-554. Pictures of the victim's vagina were taken at the time of the examination. T.T. 451. At trial, the prosecution's expert, James William Canavan, M.D., testified that the tear in the victim's hymen was most likely caused by penile penetration. T.T. 558-559. He further

testified that the penis had to penetrate the victim's vagina in order to have contacted the hymen. T.T. 556. Joseph Calabrese, M.D., a expert witness for the defense, testified at trial that he saw no evidence of any sexual trauma to the victim. He further testified that the tear to her hymen could have been caused by any blunt trauma. T.T. 698-700.

When detectives questioned Petitioner regarding the victim's allegations, he began crying and admitted that he had sexual intercourse with the victim. Petitioner stated that he had been drinking all day, that he felt badly after the intercourse occurred, and that he needed help. T.T. 313-323.

Under Indictment No. 01381-2004, Petitioner was charged with Rape in the First Degree, Criminal Sexual Act in the First Degree, and Endangering the Welfare of a Child. After a jury trial,[1] Petitioner was found guilty of Rape in the First Degree and Endangering the Welfare of a Child, and found not guilty of Criminal Sexual Act in the First Degree. T.T. 868. Subsequently, he was sentenced to a determinate term of imprisonment of twenty years with a five year period of post-release supervision. Sentencing Mins. [S.M.] 6.

On April 20, 2007, the Appellate Division, Fourth Department ("Fourth Department") unanimously affirmed the judgment of

---

[1] Petitioner testified at trial and maintained his innocence. T.T. 735-736.

conviction, and leave to appeal was denied. People v. Borden, 39 A.D.3d 1242 (4th Dep't 2007); lv. denied, 9 N.Y.3d 873 (2007), reconsideration denied, 9 N.Y.3d 959 (2007).

No collateral motions were filed.

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) inadequate jury instructions concerning his statements to police; (2) the evidence was legally insufficient to support his conviction; and (3) the trial court improperly denied his motion for a mistrial based on prosecutorial misconduct. See Pet. ¶ 12 (Dkt. # 1); Traverse [Tv.] (Dkt. # 10).

**III. General Principles Applicable to Habeas Review**

    **A.   The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court

decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.   Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**C.     The Adequate and Independent State Ground Doctrine**

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. Wainwright v. Sykes, 433 U.S. 72 (1977). Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); accord Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750; see also Levine, 44 F.3d at 126; Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). A petitioner may establish cause by pointing to "some objective

factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. See Reed v. Ross, 468 U.S. 1, 12 (1984). Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate that failure to do so will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**IV. Petitioner's Claims**

**1. Inadequate Jury Instruction & Legal Insufficiency Claims**

In grounds one and three of the petition, Petitioner contends, as he did on direct appeal, that: (1) the trial court's jury instruction concerning his statement to police was inadequate; and (2) that the evidence was legally insufficient to support his conviction. See Pet. ¶ 12, Grounds One and Three; Tv., Point I. The Fourth Department rejected both of these claims on a state procedural ground because the claims had not been properly preserved for appellate review. See Borden, 39 A.D.3d at 1243. Consequently, as discussed below, these claims are procedurally defaulted from review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a

state law ground that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the state court relied on New York's preservation rule (codified at N.Y. Crim. Proc. L. ("CPL") § 470.05(2)) to deny Petitioner's claims because they had not been properly preserved for appellate review. See Borden, 39 A.D.3d at 1243. The Second Circuit has determined that CPL § 470.05(2) is an independent and adequate state procedural ground. See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). The Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of Petitioner's claims.

This Court may reach the merits of Petitioner's claims, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claims will result in a miscarriage of justice. See Coleman, 501 U.S. at 750. In his Traverse, Petitioner alleges ineffective assistance of trial counsel as cause for the default. See Tv. at 2. A claim of ineffective assistance of counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991); United States v. Frady, 456 U.S. 152, 168 (1982). However, a claim of ineffective assistance of counsel may not be used, as here, to establish cause for the procedural default when it has not been

raised as an independent claim in the state courts. <u>Murray v. Carrier</u>, 477 U.S. 478, 488-90 (1986); <u>see e.g.</u>, <u>Ross v. Burge</u>, 03 Civ. 3867, 2008 U.S. Dist. LEXIS 20141, *20-22 (S.D.N.Y. March 21, 2008) (finding Petitioner's ineffective assistance of trial counsel claim cannot serve as cause for a procedural default because it was never presented to the state court as an independent claim). Moreover, he is unable to avail himself of the miscarriage of justice exception to the extent his conclusory assertion that "there was surely a miscarriage of justice[,]" Tv. at 3, is unsupported by "new reliable evidence . . . that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). Thus, Petitioner is unable to overcome the procedural default and his claims are dismissed as procedurally defaulted.

## 2. Improper Denial of Motion for a Mistrial Claim

Petitioner argues, as he did on direct appeal, that the trial court improperly denied his motion for a mistrial based upon the People's delay in disclosing photographs of the victim. <u>See</u> Pet. ¶ 12, Ground Two; Tv., Point III. The Fourth Department rejected this claim on the merits, finding that:

> the court did not err in refusing to grant a mistrial based upon the People's delay in disclosing photographs of the victim. Defendant was afforded time in which to review the photographs prior to their introduction in evidence, and defendant failed to establish that he was substantially prejudiced by the delay to warrant a mistrial.

Borden, 39 A.D.3d at 1243. As discussed below, this claim provides no basis for habeas relief.

A trial court's determination of whether to declare a mistrial is accorded "the highest degree of respect." Arizona v. Washington, 434 U.S. 497, 510-11 (1978). The refusal to grant a mistrial will not be considered error, much less constitutional error, unless such refusal amounts to an abuse of discretion. See United States v. Coven, 662 F.2d 162, 175 (2d Cir. 1981); McShall v. Henderson, 526 F. Supp. 158, 162 (S.D.N.Y. 1981). Under New York law, a trial court may declare a mistrial upon a defendant's motion when "there occurs during the trial an error or legal defect in the proceedings . . . which is prejudicial to the defendant and deprives him of a fair trial." CPL § 280.10[1]. "[T]he decision to grant or deny a motion for a mistrial is within the trial court's discretion" and a New York appellate court "will not interfere with this decision unless it amounts to an abuse of discretion." People v. Ortiz, 54 N.Y.2d 288, 292 (1981); see also, e.g., Jones v. Strack, 1999 U.S. Dist. LEXIS 16771, 99 Civ. 1270, * 13 (S.D.N.Y. Oct. 29, 1999).

The record reflects that, after the trial had commenced, defense counsel indicated that he needed the photograph of the victim's torn hymen -- which had been taken at the hospital shortly after the incident and which had not been produced by the prosecution prior to trial -- for use in cross-examination of the

People's expert witness and for use by his own expert witness. T.T. 373-374.  In response, the prosecutor stated that he had "made every possible effort to track down [the] photographs[,]" but could not locate them.  T.T. 373.  Defense counsel then moved for a mistrial on this basis, and the trial court denied the motion, noting that "[w]e can't order production of something [the prosecution] does not have."  T.T. 375.

Subsequent to the trial court's denial of Petitioner's motion for a mistrial, the prosecutor located the photographs, which were in the custody of the Buffalo Police Department in its photography lab, and made them available to defense counsel.  In response to the prosecutor's late disclosure of the photographs, defense counsel indicated that he would not be calling an expert witness because he had just received the photographs and "[didn't] have enough time . . . ."  T.T. 513.  The trial court offered to adjourn the case so that the defense could show the photographs to an expert.  T.T. 512-513.  Defense counsel stated, "I will not call an expert at this time . . . and I am prepared to go forward at this time."  T.T. 513.  Thereafter, Dr. Canavan testified as an expert witness for the prosecution.  Before defense counsel finished his cross-examination of Dr. Canavan, he requested an adjournment so that he could consult an expert with respect to the photographs. T.T. 585.  The trial court granted defense counsel's request for a recess over the weekend for that purpose.  T.T. 585-586.

Thereafter, the court reconvened and the trial court judge noted that, given the legal definition of rape,[2] the photograph of the victim's torn hymen was "basically totally probably irrelevant to the entire case or very meaningless in the case . . . ."  T.T. 593. Defense counsel then continued his cross-examination of Dr. Canavan and then called his own expert witness, Dr. Calabrese.  T.T. 593. Dr. Calabrese testified that, based on his review of the medical records and the photographs, he "[saw] no evidence of any sexual trauma."  T.T. 697-698.  Given these circumstances -- i.e., that the prosecutor made a good faith effort to locate the missing photographs and that the photographs were subsequently located and then used by the defense after having been given an adjournment to consult with an expert -- the Court cannot find that the trial court abused its discretion in denying Petitioner's motion for a mistrial.

To the extent Petitioner raises this claim as a violation of Brady v. Maryland, 373 U.S. 83 (1963), such a claim is meritless.[3]

---

[2]   "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person who is less than eleven years old."  Penal Law § 130.35 [3].  "Sexual intercourse . . . occurs upon **_any_** penetration, however slight."  Penal Law § 130.00[1]  (emphasis added).

[3]   And, to the extent Petitioner raises this claim as a violation of Rosario, such a claim is not cognizable on habeas review.  See Pet., Attach. at 6.  In New York, a criminal defendant is entitled to the prior statements of the prosecution's witnesses ("Rosario material"), see People v. Rosario, 9 N.Y.2d 286 (1961);  see also CPL § 240.45(1)(a), but "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  Accordingly, the failure to turn over Rosario material is not a basis for habeas relief as the Rosario rule is purely one of state law."  Randolph v. Warden, Clinton Corr.

Under Brady and its progeny, state as well as federal prosecutors must turn over exculpatory and impeachment evidence, whether or not requested by the defense, where the evidence is material to guilt or to punishment. See, e.g., Brady, 373 U.S. at 87; Strickler v. Greene, 527 U.S. 263 (1999); United States v. Bagley, 473 U.S. 667, 676, 682 (1985); United States v. Agurs, 427 U.S. 97, 107 (1976). "Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433 (1995) (quoting Bagley, 473 U.S. at 682); accord, e.g., Nieves v. Kelly, 990 F. Supp. 255, 257 (S.D.N.Y. 1997) (Cote, D.J. & Peck, M.J.).

The Second Circuit applies an analogous standard of materiality to assess Brady claims based on belated disclosure (as opposed to non-disclosure):

> Belated disclosure can hardly be said to have raised a Brady violation [here]. For such to occur, there must be "a reasonable probability" -- one "sufficient to undermine confidence in the outcome" -- that the jury would have resolved [defendant's] case differently had the prosecution disclosed the report on a timely basis.

Payne v. LeFevre, 825 F.2d 702, 707 (2d Cir.), cert. denied, 484 U.S. 988 (1987); accord, e.g., United States v. Thai, 29 F.3d 785,

---

Facility, No. 04 Civ. 6126, 2005 U.S. Dist. LEXIS 26096, *20 (S.D.N.Y. Nov. 1, 2005).

805-06 (2d Cir.), cert. denied, 513 U.S. 977 (1994); see, e.g., United States v. Woodlee, 136 F.3d 1399, 1411 (10th Cir.) ("When Brady evidence is made available during the course of a trial, 'the materiality inquiry focuses on whether earlier disclosure would have created a reasonable doubt of guilt.'"); United States v. Beale, 921 F.2d 1412, 1426 (11th Cir. 1991) ("A Brady violation can . . . occur if the prosecution delays in transmitting evidence during a trial, but only if the defendant can show prejudice, e.g., the material came so late that it could not be effectively used."), cert. denied, 502 U.S. 829 (1991); United States v. Agajanian, 852 F.2d 56, 58-59 (2d Cir. 1988) (pre-trial disclosure would not have created a "reasonable possibility" that the result of the trial would have been different); United States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978) (late disclosure of potentially exculpatory information did not violate Brady where it did not prejudice the defense).[4] Petitioner is unable to meet this standard.

---

[4] See also, e.g., White v. Keane, 51 F. Supp. 2d 495, 499-500 (S.D.N.Y. 1999); United States v. Frank, 11 F. Supp. 2d 322, 324-25 (S.D.N.Y. 1998) (defendant has a right to obtain Brady material "in sufficient time . . . to make effective use of it at trial" but not necessarily before trial); Freeman v. Kuhlman, 1998 U.S. Dist. LEXIS 14891, No. 96 CV 3749, *8 (E.D.N.Y. Aug. 3, 1998) ("The late disclosure of Brady material requires a new trial only where the defendant was deprived of a meaningful opportunity to use the material."); United States v. Cobb, 271 F. Supp. 159, 163 (S.D.N.Y. 1967) (Mansfield, D.J.) ("There may be instances where disclosure of exculpatory evidence for the first time during trial would be too late to enable the defendant to use it effectively in his own defense, particularly if it were to open the door to witnesses or documents requiring time to be marshaled and presented.").

Petitioner argues that the delayed disclosure of the photographs prevented him from "properly explor[ing] the materiality and import of the evidence . . . ." Tv. at 6. The Court finds this argument unavailing. The record reflects that Petitioner indeed used the photographs at trial with his own witness, and, therefore, cannot show that the delayed disclosure prejudiced his defense. As discussed above, after the photographs were located by the prosecution, they were immediately turned over to the defense. The trial court then granted defense counsel's request for an adjournment so that Petitioner could consult an expert, which he did. Dr. Calabrese testified and used those photographs as a basis for his opinion that there was "no evidence of sexual trauma" to the victim. T.T. 697-698. Accordingly, Petitioner has failed to demonstrate that the late disclosure of the photographs amounted to a denial of due process under Brady.

In sum, the Court finds that Petitioner's claim that the trial court improperly denied his motion for a mistrial based upon the prosecutor's delayed disclosure of the photographs provides no basis for habeas relief and is therefore dismissed in its entirety.

**V.  Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28

U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   May 18, 2011
         Rochester, New York